IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA BOUDEWYNS-BALLA, | ) | CASE NO.  1:12-CV-01979 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 17). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Victoria Boudewyns-Balla's applications for a Period of Disability and Disability Insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

In April 2008, Plaintiff Victoria Boudewyns-Balla ("Plaintiff" or "Boudewyns-Balla") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 11, 68-69).  Plaintiff alleged she became disabled on January 9, 2007, due to bipolar disorder and fibromyalgia.  (Tr. 182, 186).  The Social Security Administration denied Plaintiff's applications initially and upon reconsideration.  (Tr. 66-71, 72-84, 88-100).  Plaintiff

1

filed a written request for a hearing before an administrative law judge on June 8, 2009. (Tr. 101). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 111).

On February 1, 2011, Administrative Law Judge Donald J. Willy ("the ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 29-65). Plaintiff, represented by counsel, testified before the ALJ during the proceeding. (*Id.*). Medical expert, Dr. Nancy Terrand, ("the ME"), and Byron Pettigil, vocational expert ("the VE"), were also present at the hearing and testified. (*Id.*). On March 1, 2011, the ALJ issued his decision in which, after applying the five-step sequential analysis,[1] he concluded Plaintiff retained the ability to perform work which existed in significant numbers in the national economy. (Tr. 8-10).

Following the issuance of this decision, Boudewyns-Balla sought review of the ALJ's decision from the Appeals Council. (Tr. 7). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

2

now seeks judicial review of the Commissioner's decision. Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     PERSONAL BACKGROUND INFORMATION

Boudewyns-Balla was born on August 1, 1968 and was 38 years old on her alleged onset date and 42 years old at the time of the hearing. (Tr. 67). Accordingly, Plaintiff was at all times considered a "younger individual" for Social Security purposes. *See* 20 C.F.R.§§ 404.1563(c), 416.963(d). In the past, Plaintiff has worked as a cashier and a daycare attendant. (Tr. 59).

## III.     ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his five-step sequential analysis:

> . . .
>
> 3. The claimant has the following severe impairments: fibromyalgia, a bipolar disorder, a post-traumatic stress disorder, and substance addiction.
>
> 4. The claimant's impairments, including the substance use disorder, meet sections 12.04 and 12.06 of 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
>
> 6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform sedentary work. The claimant, however, could do simple job instructions. She would be limited to a low stress work environment, and occupations with no public contact and only minimal contact with others. The claimant would need to avoid commercial driving, and working around dangerous machinery or unprotected heights. She would also need to avoid working in a setting where alcoholic beverages are served.
>
> 8. If the claimant stopped the substance use, the claimant would be unable to perform

past relevant work.

. . .

12.  If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13.  Because the claimant would not be disabled if she stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability.  Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 14-22) (citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* [42 U.S.C. §§ 423](), [1381]().  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* [20 C.F.R. §§ 404.1505](), [416.905]().

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See [Cunningham v. Apfel]()*, 12 F. App'x 361, 362 (6th Cir. 2001); *[Garner v. Heckler]()*, 745 F.2d 383, 387 (6th Cir. 1984); *[Richardson v. Perales]()*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See [Kirk v. Sec'y of Health & Human Servs.]()*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might

4

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

For the purpose of substantial evidence review, courts cannot consider evidence submitted to the Appeals Council after the ALJ's decision. *Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir.1993). A court may consider new evidence only for the purpose of remanding the case for further administrative proceedings if the plaintiff shows that the evidence is new and material and provides good cause for not presenting the evidence in the prior proceeding. *Id.*; 42 U.S.C. § 405(g). In the present case, Plaintiff has not requested a 42 U.S.C. § 405(g) remand. Thus, when reviewing Plaintiff's claims, the Court cannot consider Exhibits 26F to 30F, which were submitting following the ALJ's decision. (Tr. 601-731).

## VI.     ANALYSIS

Plaintiff asserts two objections to the ALJ's decision. She claims that the ALJ improperly rejected the opinions of her treating psychiatrist, Dr. James Rodio. In addition, Plaintiff maintains that substantial evidence does not support the ALJ's step-five finding. Neither of these objections warrants reversal of the ALJ's decision or remand.

5

### A. Treating Source

Plaintiff argues that the ALJ failed to adhere to the treating source doctrine when analyzing the opinions of her treating psychiatrist. Pursuant to the Social Security regulations, an ALJ must give special attention to opinions from a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule" recognizes that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). Accordingly, opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not given controlling weight, the ALJ should consider several factors to determine what weight the opinion should be afforded. These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. 20 C.F.R §§ 416.927(c)(2)-(6), 404.1527(c)(2)-(6). Moreover, the regulations require the ALJ to provide "good reasons" for the weight assigned to the treating source's opinions. 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). These reasons should be "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p.

6

In the instant case, the ALJ noted three opinions from Plaintiff's treating psychiatrist, Dr. James Rodio.  First, Dr. Rodeo's April 2009 note which stated Boudewyns-Balla was "not currently capable of employment." (Tr. 596).  Second, Dr. Rodio's October 2008 Mental Functional Capacity Assessment indicating that Plaintiff was "markedly limited" and "extremely limited" in most functional abilities and anticipating these limitations would last between nine and eleven months. (Tr. 451-52).  Third, Dr. Rodio's January 2011 account stating that Boudewyns-Balla had "marked" difficulties in maintaining social functioning, deficiencies in concentration resulting in a failure to complete tasks in a timely manner, and difficulty with regular attendance and punctuality. (Tr. 600).  These "marked" limitations would affect Plaintiff between three and six hours per day.  Dr. Rodio also noted that Boudewyns-Balla had "moderate" limitations due to restrictions of activities of daily living and episodes of deterioration or decompensation in work or work-like settings which would cause her to withdraw from the situation or exacerbate her symptoms. The "moderate" limitations would affect her two to three hours per day.  Dr. Rodio opined Plaintiff would miss more than four days of work each month due to impairments or treatment.  Dr. Rodio's January 2011 diagnosis of Plaintiff included bipolar syndrome, PTSD, and substance dependence.

Boudewyns-Balla alleges the ALJ did not indicate the weight assigned to Dr. Rodio's opinions nor did the ALJ provide good reasons for discrediting his opinions.  Though the ALJ did not expressly state the weight he accorded to Dr. Rodio's opinions, this error is *de minimus* because it is clear from the ALJ's decision that the opinions were afforded less than controlling weight.  To the extent that the ALJ discredited Dr. Rodio's opinions based on the notion that Boudewyns-Balla's limitations would last only nine to eleven months, it appears that this also was improper.  Dr. Rodio later altered his diagnosis, finding that Plaintiff's symptoms were

7

expected to continue for at least 12 months. (Tr. 599).

Despite these flaws, the ALJ provided good reasons for discrediting Dr. Rodio's opinions sufficient to comport with the treating source rule.  The ALJ correctly noted that Dr. Rodio's April 2009 record, which stated that Plaintiff was "unable to work," was not a medical opinion and therefore could not be accorded weight.  Sixth Circuit case law provides that a physician's conclusory statement that a claimant is disabled is not entitled to deference under the treating source rule. *Schuler v. Comm'r of Soc. Sec.,* 109 F. App'x 97, 101 (6th Cir. 2004).  Then, the ALJ expounded that Dr. Rodio's assessments were inconsistent with other record evidence as a whole.  More specifically, the ALJ found that Dr. Rodio's assessments of Boudewyns-Balla's limitations conflicted with medical evidence showing that her symptoms improved during periods of sobriety.

Illustrating fault in Dr. Rodio's assessments, the ALJ listed specific examples of times when Boudewyns-Balla's symptoms were not as severe or limiting when sober.  For example, the ALJ noted that in a March 28, 2007 report, Dr. Aasia Syed found Plaintiff had been sober for a little over a week and described her as cooperative, friendly, euthymic, with logical and organized thoughts, no evidence of paranoia or delusions, and displaying the ability to sustain attention and concentrate. (Tr. 363).  Next, the ALJ turned to Dr. Rodio's June 2008 notes where Plaintiff had been sober for over a month, denied depression, tremors, auditory hallucinations, flashbacks, and nightmares. (Tr. 406).  The ALJ acknowledged that Boudewyns-Balla had some visual hallucinations and anxiety related to using public transportation, but was otherwise improved. (*Id.*).  The ALJ also pointed to Dr. Rodio's December 2010 record which indicated that after 24 days of sobriety, Plaintiff had brighter facial expressions, denied hallucinations, was calm and happy, and denied suicidal and homicidal ideations while sober. (Tr. 592).

8

In contrast to these periods of sobriety, the ALJ noted that Plaintiff's symptoms were noticeably worse during periods of substance abuse.  The ALJ stated that in February 2008, Plaintiff was unable to cease her marijuana use, and at her examination, she appeared anxious and her thoughts were scattered. (Tr. 424).  She reported panic attacks along with suicidal and homicidal thoughts. Next, the ALJ pointed to May 2008 treatment notes where Boudewyns-Balla acknowledged she had been drinking, looked stressed, and expressed sadness. (Tr. 411).  The ALJ also referred to Dr. Rodio's March 2010 examination of Plaintiff after she had resumed alcohol use. (Tr. 577).  Dr. Rodio recorded that Boudewyns-Balla was teary, anxious, and felt unable to control her emotions.  Even with her relapse of alcohol use, Plaintiff nonetheless had good hygiene, regular speech, and no suicidal or homicidal ideations.

Under Sixth Circuit case law, it is proper for the ALJ to compare a claimant's periods of sobriety with times the claimant was abusing substances in order to determine whether substance abuse is a contributing factor material to a claimant's disability. *Monateri v. Comm's of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011).  Notably, even Dr. Rodio's records reflect improvements in Boudewyns-Balla's mental health when she reported for treatment during periods of sobriety.  Along with patterns of improvement in the record, the ALJ relied on the testimony of Dr. Nancy Terrand, the ME, who found that absent substance abuse, Plaintiff's limitations improved and noted that Boudewyns-Balla could carry out simple and some detailed job instructions. (Tr. 50-52).  Thus, the ALJ's consideration of the treating source's opinions are supported by substantial evidence.

Notwithstanding the good reasons provided by the ALJ, Boudewyns-Balla argues that the ALJ's basis for discrediting Dr. Rodio's opinion was flawed.  Plaintiff's objections are unavailing.  First, Boudewyns-Balla argues the order in which Dr. Rodio and Dr. Clint Felker

listed the ailments they diagnosed her with—beginning with bipolar disorder and followed last by alcohol dependence—establishes that Plaintiff's mental disorders were of greatest significance and her substance dependence of lesser significance. Plaintiff has provided no case law showing that a doctor's order of diagnosis establishes one aliment is more severe than another, leading to the inference that in her case, substance abuse does not have a material effect on her disability. In addition, Dr. Felker examined Plaintiff before her alleged onset date, making his diagnosis of less import. (Tr. 351-52).

Next, Boudewyns-Balla points to opinions by Dr. Michael Tran and Dr. Sayed in an attempt to show that these physicians did not diagnose her with substance abuse disorders. This argument is not compelling. Regardless of Plaintiff's alleged lack of substance dependence, Dr. Tran and Dr. Sayed's notes do not indicate that Plaintiff would be precluded from working due to bipolar disorder.

Plaintiff also claims that none of the state agency non-examining consultants found substance abuse to be a contributing factor material to her disability. In reality, these consultants' opinions support the ALJ. Dr. Mel Zwissler noted that Plaintiff suffered from substance dependence, and even with her dependence, she was capable of work. (Tr. 463, 471). Dr. Irma Johnson noted that Plaintiff's substance addiction was in remission and found her capable of work. (Tr.512-13). Dr. Karen Terry noted substance use in Plaintiff's history and likewise found her able to work without her dependence. (Tr. 537-39).

Finally, Boudewyns-Balla argues that the ALJ improperly relied on Dr. Terrand's opinion. Plaintiff alleges Dr. Terrand's opinion is unreliable because she was the only medical source who found Plaintiff's substance dependence was material to her disability. This argument is unavailing, because Plaintiff has not pointed to a medical source stating she was disabled

absent her substance abuse.  In fact, Dr. Zwissler found that even with her substance abuse, Boudewyns-Balla was capable of working.  Plaintiff also incorrectly argues that when testifying, Dr. Terrand stated her only experience working with combined cases of substance addiction and mental health was during her training.  In reality, Dr. Terrand testified about her experience working with patients whose sole impairment was substance abuse.  She stated that she worked with these individuals while in training, and less so in her practice, which is irrelevant given Plaintiff's history of both mental illness and substance abuse. (Tr. 55).  Accordingly, the ALJ provided sufficient reasons supporting the weigh accord to Dr. Rodio's opinions to comport with the treating source rule.

### B.  Step-Five Finding

Plaintiff's second assignment of error is due to the ALJ's alleged faulty step-five finding. Boudewyns-Balla argues that a limitation in a hypothetical to the VE was worded differently from the corresponding limit in the ALJ's residual functional capacity ("RFC") finding. According to Plaintiff, the ALJ's hypothetical question provided for a broader range of work than would his adopted RFC.

At step-five in the sequential analysis, the Commissioner has the burden of proving there is work available in the national economy that the claimant can perform. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).  "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) *citing Varley v. Sec'y of HHS,* 820 F.2d 777, 779 (6th Cir.1987).

The Court disagrees with Plaintiff's allegation of error because remand of her case on the

11

basis of this issue would prove futile.  When remand is a useless formality, "courts are not required to 'convert judicial review of agency action into a ping-pong game.' " *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) *quoting* *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

During Boudewyns-Balla's oral hearing, the ALJ posed the following hypothetical question to the VE:

> "…[S]he can do . . . sedentary work with low-stress environment, non-public contact type of environment, *no requirement that she be around other coworkers and supervisors [in] the normal course of the day*, simple job instructions, no driving, no hazardous equipment, not around alcohol." (Tr. 59-60) (emphasis added).

The VE stated that jobs would be available for an individual with such restrictions. (Tr. 60).

Later in the hearing, Plaintiff's counsel added the following limitation to the ALJ's hypothetical:

> "[T]he person be limited to only *superficial and infrequent interactions* with others, generally, not limited to the public, but superficial and infrequent interactions with public, coworkers, and supervisors." (Tr. 62) (emphasis added).

The VE responded that his "initial gut reaction" was that this limitation would change the examples of jobs he cited in response to the ALJ's hypothetical and went on to say:

> "[B]ut I don't know how superficial and infrequent is defined.  I mean, it would have to be really precisely defined *because all occupations are going to involve some interaction with others.*  It's just unavoidable in this day and age, you know, in terms of world of work, but superficially, infrequent would have to be -- for me, would have to be quantified more precisely . . . Before I would say it completely eliminates the ability to maintain competitive employment." (Tr. 62) (emphasis added).

The VE did not ultimately respond to this hypothetical because Plaintiff's attorney was unable to define "superficial and infrequent" more precisely. (*Id.*).  In his decision, the ALJ's RFC finding provided that Plaintiff could perform work "with no public contact and *only minimal contact with others*." (Tr. 17) (emphasis added).

Now, Boudewyns-Balla claims that the ALJ's ultimate RFC finding within his decision is inconsistent with the hypothetical question he posed to the VE, which he relied upon. The Court notes that the ALJ posed a hypothetical question to the VE that stated "no requirement" of contact with other workers, but then described the coworker and supervisor contact requirement as "minimal" in his RFC. Nevertheless, this discrepancy is immaterial. The record shows that the VE interpreted the language of "no requirement" of contact as involving at least some level of contact with other workers, because he identified jobs under this restriction, whereas later in his testimony, the VE stated jobs are not available to an individual who cannot have contact with anyone. Thus, the VE's identification of jobs under the "no requirement" of contact with other workers indicates that he interpreted the phrase to mean at least *some* level of contact might occur. Given the VE's interpretation of "no requirement" of contact, it would be futile to remand the case for the ALJ to determine exactly what level of contact the VE had in mind, because the final result would still be that jobs which have "no requirement" of contact exist, and that is sufficient to meet the Commissioner's burden of proof at step-five. Notably, Boudewyns-Balla's doctors have not opined that she cannot have any contact with others, but only that contact must be limited. In conclusion, even if the ALJ mischaracterized the VE's testimony in the RFC finding, remand on this issue would be futile.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  September 10, 2013.